## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Professional Portable X-Ray, Inc. and Evolve, Inc. | **Case No:** _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | **Jury Trial Demanded** |
| Brad Nelson, Ken Kern, and WebInterstate, Inc., | |
| Defendants. | |

---

Plaintiffs Professional Portable X-Ray, Inc. ("PPX") and Evolve, Inc. ("Evolve") (collectively "Plaintiffs"), by their undersigned counsel, hereby commence this suit against Defendants Brad Nelson, Ken Kern, and WebInterstate, Inc. ("WebInterstate") (collectively "Defendants").  Plaintiffs make the following allegations based upon personal knowledge, information and belief, and their attorneys' reasonable investigative efforts as to Defendants' actions and misconduct, and state and allege as follows:

### INTRODUCTION

1.      PPX seeks a declaratory judgment that it is the author and owner of the MediMatrix software, an internet-based application that the Defendants created for PPX on a "work for hire" basis, as well as a declaration that Brad Nelson, Ken Kern, and WebInterstate's fraudulent registration of the MediMatrixII copyright is invalid.  Evolve also seeks a declaratory judgment that its Lattice Pro software does not infringe on any copyrights owned by the Defendants.  Finally, PPX seeks damages for WebInterstate's

1

breach of a 1999 software development agreement, as amended by the 2002 amendments, as well as a breach of a 2009 software hosting services agreement.

## PARTIES

2.      PPX is a Minnesota Corporation whose principle place of business is located at 755 Cliff Road East, Burnsville, MN 55337.  PPX is owned by its President and CEO, Sue McNamee, and its Chief Technology Officer, Mike McNamee.  PPX provides portable digital diagnostic imaging services to correctional facilities, nursing homes and other long-term care facilities throughout Minnesota.

3.      Evolve is a Minnesota Corporation whose principle place of business is located at 755 Cliff Road East, Burnsville, MN 55337.  Evolve is owned by PPX President and CEO, Sue McNamee, and PPX Chief Technology Officer, Mike McNamee.  Evolve owns and markets an internet-based electronic ordering and billing software called Lattice Pro.

4.      Brad Nelson is an adult resident of the State of Minnesota and currently resides at 3710 120th Court West, Fairbault, MN.  Brad Nelson is the CEO of WebInterstate.

5.      Ken Kern is an adult resident of the State of Minnesota and, upon information and belief, currently resides at 1665 Dane Road, Owatonna, MN.  Ken Kern is the President of WebInterstate.

6.      WebInterstate is a Minnesota Corporation whose principle place of business is located at 3710 120th Court West, Fairbault, MN.  WebInterstate is owned by its CEO, Brad Nelson, and its President, Ken Kern.  WebInterstate develops and hosts internet based applications and services.

2

## JURISDICTION & VENUE

7.      This Court has original jurisdiction over Plaintiffs' declaratory judgment claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because these claims arise under the Copyright Act, 17 U.S.C. §§ 101, *et seq*., the Lanham Trademark Act, 15 U.S.C. §1051, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

8.      This Court has supplemental jurisdiction over PPX's breach of contract claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy and derive from the same nucleus of operative facts.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) & (2) because all of the defendants are residents of this judicial district and because a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTS

10.     PPX was founded in 1989 by Sue McNamee to provide portable diagnostic imaging services to the frail and aging population in nursing homes and other long-term care facilities throughout Minnesota. Over time, PPX expanded its services to correctional facilities, sports facilities, and home healthcare settings where patients cannot easily be transported to a traditional medical facility for radiological services.

11.     In or about September 1999, PPX requested a proposal from Brad Nelson for the development of an internet-based software that would allow PPX customers to request quotes and submit work orders, as well as automatically generate invoices based on the services ordered.

12.     On September 14, 1999, Brad Nelson and Ken Kern submitted a joint response to PPX's request for a proposal, offering to develop the custom software on a "work for hire" basis, the specifications of which would be laid out in a final design document prepared at a later date in conjunction with PPX.  In their proposal response, Nelson and Kern also offered to host the custom software on their servers.  Pursuant to the proposal response, PPX would own all of the rights to the software upon payment of a $25,000 software development fee, with additional fees in the form of 25% of the proceeds from any "resale of the custom developed software to other organizations."  PPX accepted their offer.

13.     On June 19, 2000, Brad Nelson and Ken Kern founded WebInterstate for the purpose of developing PPX's custom software. WebInterstate assumed Brad Nelson and Ken Kern's obligations under the September 14, 1999 software development agreement.

14.     Thereafter, PPX educated Defendants about the portable X-Ray industry and worked closely with Defendants to define and design the software specifications based on industry specific business rules, including preparing a list of core features, creating a work flow diagram, designing custom reports, and mapping data fields.  Because the final design documents called for additional features not included in the original software development agreement, the final development cost increased to $33,700 and this was documented in amendments/change orders to the original agreement.

15.     PPX paid WebInterstate in full for developing the software.

16.     In or about July 2002, the custom software was released under the name MediMatrix, and PPX paid WebInterstate hosting and maintenance fees as invoiced.  At or

about the same time, PPX purchased the internet domain name www.medimatrix.com. WebInterstate managed this domain as part of its hosting service.

17.     Later that same month, PPX formed a company called MedDimensions, Inc. ("MedDimensions") as the primary licensor to market and sell the MediMatrix software to other portable X-ray companies throughout the country upon the assertion by Defendants that selling MediMatrix would be easier if not sold by a competitive service provider (i.e. PPX).  Defendants offered to help with marketing efforts by creating a demonstration environment and working with MedDimensions sales people to create sales scripts.

18.     In or about October 2002, MedDimensions President Mike McNamee attended the National Association of Portable X-Ray Providers ("NAPXP") annual convention in Los Vegas, NV, in order to market the MediMatrix software to other portable X-Ray providers.  PPX invited and paid for WebInterstate President Ken Kern to attend the conference to help market MediMatrix.

19.     Following the 2002 NAPXP convention, at which the MediMatrix software garnered little interest from other portable X-ray providers, PPX realized that the MediMatrix software would not be commercially viable unless it featured a HIPAA complaint electronic billing module.  Accordingly, in or about December 2002, PPX asked Defendants to update the MediMatrix software to include that feature. Again, PPX educated Defendants on industry practices, including HIPAA requirements for electronic billing, and worked closely with Defendants to update software.

4839-5820-2186 v.3

20.     Although PPX gave WebInterstate a check for the additional development costs associated with the new e-billing module, WebInterstate returned it several months later without explanation.

21.     On or about January 1, 2004, WebInterstate completed a beta version of the updated MediMatrix software, which it recommended PPX call "MediMatrixII," and PPX began using it on a trial basis.  Then, on or about April 1, 2004, WebInterstate completed the final version of the updated MediMatrix software and PPX began using it to process and bill all of its work orders electronically.  Thereafter, PPX agreed to pay WebInterstate $6,500 per month to host the MediMatrix software on its server.  PPX felt the hosting fee was warranted because PPX drastically increased its usage of WebInterstate's hosting service following the addition of the e-billing module, and because WebInterstate had not realized any royalties from MedDimensions' efforts to sell the MediMatrix software to other portable X-ray providers.

22.     Shortly after the updated MediMatrix software was finalized, WebInterstate asked to assume the marketing and sales efforts from MedDimensions.  This was due, in part, to Mike McNamees' limited capacity to market the MediMatrix software since becoming PPX's Chief Technology Officer in December of 2002, and because WebInterstate had a financial incentive to increase sales to other portable X-ray providers. PPX also continued to work with Defendants to improve the MediMatrix software, including educating Defendants about the digital imaging and communications in medicine standard for storing and transmitting information in medical imaging and helping WebInterstate incorporate that standard into the MediMatrix software.

6

23.     In or about January 2005, WebInterstate sent a letter to PPX stating that WebInterstate had increased its monthly hosting fee of the MediMatrix software to $7,5000 per month, as of August 1, 2004, but, unbeknownst to PPX, had been giving PPX a $1,000 monthly discount since that date.  WebInterstate further stated that it intended to apply the discount until PPX had received $25,000 worth of discounts.  WebInterstate alleged that the discount was intended to "giv[e] something back to [PPX] for paying for [MediMatrixI] as well as being a good customer for [MediMatrixII]."

24.     On March 10, 2005, after PPX balked at the discount because it believed WebInterstate was surreptitiously trying to acquire ownership of the MediMatrix software, WebInterstate assured PPX that was not the case, alleging that the discount was merely intended as a good will gesture because outside sales of the MediMatrix software were disappointing.

25.     Using PPX's supposed misunderstanding of WebInterstate's intent as pretext, WebInterstate then requested that PPX sign a "MediMatrix Software Service Agreement" and "MediMatrix2 sales commission agreement" so that each party would "know what's in it for them."  Notably, the proposed sales commission agreement would have increased WebInterstate's royalty on sales of the MediMatrix software from 0.25%, as originally agreed, to 0.66%, which increase WebInterstate justified as necessary to ensure that Brad Nelson and Ken Kern made "a reasonable salary."  PPX declined to sign either of the proposed agreements.

26.     Then, on March 21, 2005, without PPX's knowledge or permission, Brad Nelson and Ken Kern fraudulently registered the copyright to "MediMatrixII" (Reg. No.

4839-5820-2186 v.3

TX0006175487), naming themselves as the authors of the software notwithstanding that they had created it for PPX as a "work for hire" and had not acquired adaptation or derivative rights.   Upon information and belief, Brad Nelson and Ken Kern registered the entire object code for the MediMatrix software, not merely the object code that was unique to "MediMatrixII."   Upon further information and belief, Brad Nelson and Ken Kern did not identify "MediMatrixII" as a derivative or adaptation of the original MediMatrix software.  Upon further information and belief, Brad Nelson and Ken Kern did not identify PPX or Sue McNamee or Mike McNamee as authors of "MediMatrixII," notwithstanding the concept, design, and specifications were authored by Sue McNamee and Mike McNamee as employees of PPX.

27.    In or about 2008, Sue and Mike McNamee commissioned a different developer to create a new internet-based electronic ordering and billing application to replace the MediMatrix software, which became known as Lattice Pro.  Lattice Pro did not use any of the MediMatrix software source code.  In fact, WebInterstate never gave Sue McNamee, Mike McNamee or PPX the MediMatrix software source code as it was hosting the same for PPX.

28.    On or about March 10, 2009, Sue and Mike McNamee incorporated Evolve, Inc. ("Evolve") to own and market the Lattice Pro software.

29.    In or about November of 2009, WebInterstate threatened to stop providing PPX hosting services unless PPX signed a services agreement.  On November 23, 2009, PPX acquiesced and executed the 2009 services agreement for the hosting services related to the MediMatrix software.

30.     Pursuant to the 2009 services agreement, PPX obtained a license to use WebInterstate's hosted site services based on a revised pricing schedule linked to the number of diagnostic procedures processed by PPX customers through WebInterstate's server.  So long as PPX paid a minimum monthly fee, it was guaranteed online access to patient reports and results contained on WebInterstate's server for a minimum of two years, and could obtain archived reports delivered to it in an electronic data format for up to seven years.  The 2009 services agreement contained an intellectual property provision acknowledging that both parties reserved their intellectual property rights.

31.     On or about January 5, 2015, Evolve implemented Lattice Pro and PPX began transitioning its customer's use of the MediMatrix software to Lattice Pro. PPX notified WebInterstate of its intent to reduce its use of WebInterstate's hosting services but that it needed continued access to its patient records stored on WebInterstate's servers. WebInterstate advised PPX that, pursuant to the 2009 services agreement, as long as it paid the minimum monthly host service fee, it would still be able to access its patient records. PPX continues to pay WebInterstate the monthly host service fees.

32.     In or about May 2017, Evolve and WebInterstate representatives attended the same tradeshow at which WebInterstate learned that Evolve was marketing the Lattice Pro application to the NAPXP (now APDA) membership of portable diagnostic imaging suppliers.

33.     Shortly thereafter, on May 12, 2017, WebInterstate sent Sue and Mike McNamee a cease and desist letter asserting that it owned the copyright to the MediMatrix software and alleging, without foundation, that Lattice Pro infringed on its copyright.

9

Upon information and belief, WebInterstate's infringement claims are based on a presumption that Lattice Pro is a derivative or infringing adaptive version of the MediMatrix software.

34.     In its May 12, 2017 letter, WebInterstate threatened to sue Sue McNamee, Mike McNamee, PPX, and/or Evolve if they did not immediately destroy Lattice Pro.  That same day, WebInterstate terminated PPX's online access to the hosting service for which PPX was still making timely payments.  This removal of PPX's access rights resulted in PPX being unable to access or provide historical information PPX is required to produce during any regulatory or lawful audit of PPX's customer files.

35.     On May 18, 2017, PPX sent an email to WebInterstate's technical contact for the hosting services requesting that it restore PPX's online access to patient records so that it could comply with an audit by the Minnesota Department of Revenue.  In response, and contrary to the terms of the 2009 services agreement, WebInterstate demanded that PPX provide "substantiation of the audit" to prove this was a "bona fide request" before allowing PPX access to its archived data.

36.     Prior to receiving WebInterstate's May 12, 2017 letter, PPX did  not know that Defendants Brad Nelson and Ken Kern had fraudulently registered the copyright to "MediMatrixII."  Upon Defendants' assertion of copyright infringement, PPX conducted a further investigation through which it learned, for the first time, that Brad Nelson and Ken Kern had fraudulently registered "MediMatrixII" with the United States Copyright Office as individual co-authors of "MediMatrixII."

4839-5820-2186 v.3

37.     Upon information and belief, WebInterstate has sold, and continues to sell, the MediMatrix software to hundreds of customers.  WebInterstate has not given PPX any of the proceeds from those sales, notwithstanding the terms in the 1999 development agreement, as amended in 2002, that PPX receive 75% of such proceeds.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment of PPX's Ownership of the MediMatrix Software and Invalidity of the Copyright Set Forth in Registration No. TX0006175487)**

38.     The foregoing allegations of this Complaint are realleged and incorporated herein by reference.

39.     An actual and justiciable controversy exists between PPX and the Defendants regarding the ownership of the MediMatrix software and the validity of the copyright set forth in registration number TX0006175487.

40.     A declaratory judgment will serve a useful purpose in clarifying and settling the ownership of the MediMatrix software as well as the validity of the copyright at issue and it will afford relief to PPX from the uncertainty, insecurity, and controversy giving rise to this proceeding.

41.     WebInterstate developed the MediMatrix software, including the features contained in "MediMatrixII," for PPX on a "work for hire" basis.

42.     PPX did not grant the Defendants authority to create derivative works of the MediMatrix software.

43.     Upon information and belief, Defendants Brad Nelson and Ken Kern fraudulently procured the copyright for "MediMatrixII" contained in registration number TX0006175487 by (1) misrepresenting their authorship of the software, (2) failing to

disclose that the work was an unauthorized derivative work, and/or (3) failing to disclose the derivative nature of the work.

44.     PPX therefore is entitled to a declaratory judgment that it is the author of the MediMatrix software, that the copyright set forth in registration number TX0006175487 is invalid, and that it be named as the author of the copyright contained in registration number TX0006175487.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgement of Noninfringement)**

45.     The foregoing allegations of this Complaint are realleged and incorporated herein by reference.

46.     An actual and justiciable controversy exists as to whether Evolve's Lattice Pro software infringes on any copyright owned by the Defendants.

47.     A declaratory judgment will serve a useful purpose in clarifying and settling whether Evolve's Lattice Pro software infringes on any copyright owned by the Defendants, and it will afford relief to Evolve from the uncertainty, insecurity, and controversy giving rise to this proceeding.

48.     On May 12, 2017, WebInterstate accused Sue McNamee, Mike McNamee, PPX and/or Evolve of infringing on its "MediMatrixII" copyright by marketing the Lattice Pro software—which WebInterstate alleges is an unauthorized derivative work of the MediMatrix software—and threatened to sue if they did not immediately destroy Lattice Pro.

4839-5820-2186 v.3

49.     PPX, not WebInsterstate, is the author of the MediMatrix software (including "MediMatrixII") and therefore owns the rights to authorize derivative works based upon the software.

50.     The Lattice Pro software was created independent of and without access to the MediMatrix software (including "MediMatrixII") source code.

51.     Upon information and belief, WebInterstate's infringement claims are based on an inaccurate presumption that WebInterstate owns the intellectual property rights of the MediMatrix software and that Lattice Pro is a direct derivative or adaptation of the MediMatrix software.

52.     Evlolve therefore is entitled to a declaratory judgment that its Lattice Pro software does not infringe on any copyright owned by the Defendants.

### THIRD CAUSE OF ACTION
### (Breach of Contract against WebInterstate for Failing to Pay Royalties)

53.     The foregoing allegations of this Complaint are realleged and incorporated herein by reference.

54.     On September 14, 1999, PPX entered into a contract with Brad Nelson and Ken Kern wherein Nelson and Kern agreed to develop custom software for PPX on a work for hire basis.  Pursuant to the contract, PPX would own the custom developed software upon payment of a $25,000 software development fee, and would receive 75% of the proceeds of any resale of the custom developed software.

55.     WebInterstate assumed Brad Nelson and Ken Kern's obligations under the September 14, 1999 contract.  WebInterstate also received the benefits of the contract,

4839-5820-2186 v.3

including the software development fee and the right to proceeds from the resale of the MediMatrix software.

56.     Upon information and belief, WebInterstate has sold, and continues to sell, the MediMatrix software to hundreds of customers.

57.     WebInterstate has breached, and continues to breach, the contract by failing to pay PPX its share of the proceeds from the sale of the MediMatrix software.

58.     As a direct and proximate cause of WebInterstate's breach of contract, PPX has suffered and will continue to suffer actual damages in an amount to be determined.

## FOURTH CAUSE OF ACTION
### (Breach of Contract Against WebInterstate for Denying PPX Access to Its Records)

59.     The foregoing allegations of this Complaint are realleged and incorporated herein by reference.

60.     On November 23, 2009, PPX entered into a services agreement with WebInterstate whereby WebInterstate agreed to host PPX's MediMatrix software on its server in exchange for a host service fee.

61.     Pursuant to the 2009 services agreement, PPX was guaranteed online access to its patient reports and results stored on WebInterstate's server for a minimum of two years, and can obtain archived reports delivered to it in an electronic data format for up to seven years.

62.     PPX has performed under the 2009 services agreement by making all host service fee payments in a timely manner.

4839-5820-2186 v.3

63.    WebInterstate has breached the 2009 services agreement by deactivating PPX's online access to its patient reports and results and refusing to provide access to archived reports unless PPX provides independent substantiation that its request for such records and data are "bona fide."

64.    As a direct and proximate cause of WebInterstate's breach of contract, PPX has suffered and will continue to suffer actual damages in an amount to be determined.

**WHEREFORE**, Plaintiffs., respectfully requests that the Court enter judgment providing the following relief:

A.    A declaratory judgment that PPX is the author of the MediMatrix software;

B.    A declaratory judgment that the copyright set forth in registration number TX0006175487 is invalid;

C.    A declaratory judgment that PPX be named as the author of the copyright contained in registration number TX0006175487;

D.    A declaratory judgment that Evolve's Lattice Pro software does not infringe on any copyright owned by Defendants;

E.    Award PPX damages in an amount to be determined for WebInterstate's breach of the September 14, 1999 software development agreement, as amended in 2002;

F.    Award PPX damages in an amount to be determined for WebInterstate's breach of the November 23, 2009 services agreement;

G.    Award PPX and Evolve their reasonable attorneys' fees under the Copyright Act; and

H.   Award PPX its costs and disbursements, prejudgment interest, and such other

relief as the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial of all issues so triable.


Dated: July 3, 2017                    By   s/Stanley E. Siegel

Stanley E. Siegel          Reg. No. 199552
Matthew C. Murphy          Reg. No. 391948
**Attorneys for Plaintiff Portable X-Ray, Inc.**
NILAN JOHNSON LEWIS PA
120 South Sixth Street, Suite 400
Minneapolis, MN  55402
Telephone:  (612) 305-7500
Facsimile:  (612) 305-7501
Email:     ssiegel@nilanjohnson.com
           mmurphy@nilanjohnson.com

16

4839-5820-2186 v.3